Appeal Number 20-27-81. Yeah, there you are. Mr. Kelly, Mr. Berry, good morning. Mr. Kelly, we'll begin with you. Good morning. James Kelly for the appellant, Dr. Page. If I may begin. Dr. Page is seeking reversal of the district court's dismissal of his complaint of defamation-related claims against the DNC, Perkins-Coy Law Firm, and Mr. Elias and Sussman, who serve atop the nation's most powerful law firm and its political group, bent on harming an exemplary American's life, a distinguished U.S. Naval graduate with extensive experience in intelligence and national security. The complaint contains factual matter, accepted as true to state a claim of relief, plausible on its face, that is, not conjecture or speculative, to survive a motion to dismiss. Those allegations are based upon information and belief, in good faith, concerning the factual matters underlying and underpinning, satisfying the elements of each of the claims, and in good faith, respect to the diversity of citizenship in this case. This case is all about... Mr. Kelly, Mr. Kelly, excuse me please. If, in order to find some precedent, namely INS International versus Bowdoin later... We're talking about the diversity of jurisdiction in regards to an unincorporated association? Correct. That's a thorny, yes, it's a thorny issue, and to say that it's overturning precedent, Cardin is really one of the controlling precedents in this matter, and at that time, it didn't seem to imagine an unincorporated association such as Perkins-Coy in this particular case, which as a... But doesn't it find that in order to determine diversity and the citizenship of a U.S. citizen who is domiciled outside of the citizen, that that citizen cannot, doesn't have statehood essentially for diversity purposes? And we don't really know that yet at this point. No, I'm sorry, I'm talking about, Mr. Kelly, I'm talking about the case, and doesn't INS International hold that? It is a holding dealing with unincorporated association and diversity jurisdiction. Right. Yes. So, if we were to find subject matter jurisdiction for you here, would we have to overrule that case? I think that we're really putting the card in front of the horse. We're just at the complaint stage, and we don't know for a fact whether or not there is necessarily a stateless membership. You filed that in your statement of jurisdiction with the appellate court. You filed and alleged that certain partners at Perkins-Coy were U.S. citizens but were domiciled outside of the United States. Well, when we mention domicile for tax purposes, a U.S. citizen can never be stateless. They're still paying state taxes. But this isn't for tax purposes. That brings me back, and I'm sorry to interrupt, but that brings me back to INS International, where we said for diversity purposes, not tax purposes. Those are two separate inquiries. For diversity purposes, an individual who is stateless, namely a U.S. citizen who is domiciled outside of the United States, cannot, that that defeats diversity. So I go back to my original question. Given that some of the Perkins-Coy partners here in the partnership that you have named as a defendant in the case are U.S. citizens but are domiciled outside of the United States, if we were to find diversity here and that there is subject matter jurisdiction, would we have to overrule our precedent? In this case, it would again be premature because we need to deliver jurisdictional discovery to the defendant, the FLEs in this case, to make that determination at the outset. Why would jurisdictional discovery? You've already said that in a pleading with the courts. So what would discovery as to citizenship, not personal jurisdiction, but what would discovery as to citizenship provide here that you haven't already alleged and that isn't in the affidavits submitted by the Perkins-Coy partners? At this point, at the time that the complaint was originally filed, we don't know whether or not there was a domiciled member of the firm in China or elsewhere at the time the complaint was filed. Therefore, we need to conduct diversity or rather discovery interrogatories and requests to produce on that particular point. Again, I think it would be premature. Do you agree that if those Perkins-Coy partners were domiciled outside of the United States at the time the complaint was filed that we don't have subject matter jurisdiction? I would say that we do have subject matter jurisdiction because this characterization of stateless member, a stateless partnership is, LLC is a fiction and a stateless member abroad is a fiction upon a fiction, which is against the congressional intent of the 1332 Diversity Statute, Supreme Court. So you're saying we might have to overrule our party defeats diversity. Again, I think it would be premature to make any type of conclusion that these folks in China, Hong Kong, Beijing, wherever they may be, are necessarily domiciled there when they're still in the U.S., considered to be U.S. citizens. If we, we're not, your point's clear on the I'm not sure there, but if we get to the legal, if the legal point you were making, you might be right as a practical matter that this outcome doesn't make a lot of sense today in a world of LLC and other non-corporate forms that operate. But wasn't that precisely the point at the end of the Cardin opinion where the Supreme Court said the time may be upon us for the Jurisdiction Statute to be amended and modified and updated. But that's the role of Congress. Anticipating that question, that would be the role of Congress. The Federal Rules Committee has convened a number of times about U.S. nationals versus U.S. nationals, U.S. nationals versus aliens. And this is really getting into an alienage type of question. And the Federal Rules Committee can't overturn a statute. And this diversity statute has been pigeonholed for decades, involving questions of, again, citizens, U.S. citizens versus aliens, aliens versus aliens. Here, these stateless partners, so-called stateless partners, have no standing and no relevance to this litigation whatsoever. This has involved Mr. Elias and Mr. Sussman, who are named defendants in this case, has nothing to do with China. China is completely beyond the scope of consideration here. But isn't that, wasn't that true of the Scott and Allen partner that we talked about in ISI International in 2003, the Scott and Allen partner that lived in Canada? Well, at this point, this is, our allegations in the claim are based on information and belief made in good faith that everyone is a U.S. national. And here it appears that these China members, we need to know more information. We need to propound very accurate and precise interrogatories of requests produced from Perkins Coie, which has in its possession that information before we make that determination here today. And I should mention I'm about less than 90 seconds. I would like to reserve time for rebuttal if I may, please. Yeah, of course you can. Very well, Mr. Kelly. Mr. Berry, good morning to you. Good afternoon. We'll turn to you. Thank you, Judge Scudder. May it please the court. Stephen Berry from Latham Watkins on behalf of defendants at police. Your honors, there are two basic jurisdictional defects in this matter and each independently supports the district court's decision to dismiss the case in its entirety. First, as your honors questions alluded to, the court lacks subject matter jurisdiction because Perkins Coie has three stateless partners, which precludes diversity jurisdiction and there's no federal claim asserted in this case. The Supreme Court held in Cardin that a partnership assumes the citizenship of its partners and consistent with the Supreme Court's Newman-Green decision in this court's holding in Sadat versus Mertes, a U.S. citizen domiciled outside of the United States is not a citizen of any U.S. state purposes of the federal diversity statute. Taking those two principles together, a partnership is stateless and diversity jurisdiction is unavailable if any of its partners are U.S. citizens domiciled abroad. This court, as you indicated, Judge St. Eve and Judge Scudder reached exactly that conclusion in ISI International and to our knowledge every other circuit court to consider this issue, including specifically as applied to international law firms, has come out the same way. Plaintiffs haven't identified a case to the contrary and we don't think there's any reason for this. What about Mr. Kelly's point that, all right, that's all fine and dandy on the law, but we have no idea, as a matter of fact, who lives where that is a member of the partnership and we need some discovery to get this all ironed out? So, Judge Scudder, we did submit three sworn affidavits with our responsive brief. Neither in their brief nor during argument a moment ago did plaintiffs counsel actually dispute any of the facts, call into question their veracity, or for that matter and maybe more importantly dispute the application of what we think are well-settled principles to those facts. So, I do think ISI International clearly applies here. I think that case is consistent with the way that every other court has addressed this and I think absent some specific dispute, well-founded dispute, as to the facts contained in those affidavits, I don't think there's any reason for the court to allow the sort of kind of broad-brush jurisdictional discovery that that plaintiff has generally suggested it might need here without at all defining exactly what information it would need, which elements of the facts set forth in the affidavits. Mr. Berry, what about Mr. Kelly's argument that he doesn't know the citizenship of these three partners at the time he filed the complaint? So, he doesn't know they were stateless back in 2016. Yeah, Judge Senev, I think that is clearly addressed in the affidavits that lay out with specificity the timing of each individual's domicile in China. And so, again, absent some, you know, there is, I think, Mr. Kelly made sort of a general disclaimer that you can't be certain about the citizenship, but we think it is clearly spelled out and substantiated within the affidavits. We do think, Your Honors, that ISI International applies here. We think that squarely addresses the subject matter jurisdiction issue. I think, Judge Scudder, you're exactly right that the sort of policy concerns that Plaintiffs' Counsel raised in their brief are exactly the ones that the Supreme Court addressed in its Carden decision when it acknowledged that this rule is precedent-bound, is technical, but it is the law, and it is an issue for the legislature to decide, and I think we think it clearly applies here. Turning to the second jurisdictional deficiency in this case, as an independent ground for dismissal, and obviously the one that the District Court dismissed the case on, this case simply has nothing to do with the State of Illinois, and we believe the District Court correctly held the Plaintiffs have not established specific jurisdiction over any defendant in the Northern District of Illinois. The Plaintiffs are Oklahoma residents, alleging that partners in the D.C. office of a Seattle-based law firm hired a D.C. consulting company, which in turn engaged a former British intelligence officer to conduct political opposition research outside of the United States. Mr. Barry, is there a reason that the District Court addressed personal jurisdiction rather than subject matter jurisdiction? I know the law says the court can decide either or, but is there a reason here that this was the focus of the opinion? Not necessarily, Judge Sidney. I do think it's right, as you say, under the Supreme Court's Rergis decision and others, that there's not a strict jurisdictional hierarchy. We think the lack of personal jurisdiction was obvious, frankly, on the face of the complaint, and so it was a threshold issue that the court in its discretion could reach first. We do certainly think this court could reach either issue first or both and dismiss the case, affirm the dismissal on the case on either jurisdictional ground. So ultimately, Your Honors, there really just is not a connection on the faxes alleged to Illinois. There's this long chain of events that plaintiffs allege. They point, as Mr. Kelly alluded to in his opening remarks, to actions by partners in the D.C. office of Perkins Coie. There's no harm alleged in Illinois, and so the question really is, what could possibly connect this case to Illinois? And on that score, plaintiffs point to two things. First, they point to a letter sent by Perkins Coie's general counsel in October 2017, more than a year after publication of the September 2016 article that allegedly contained defamatory information. We think it's telling that the complaint mentions the D.C. only in passing as an unnamed, quote, senior Chicago lawyer in just two paragraphs, and describes the letter rightly as narrowly related to a decision in the context of the congressional inquiry to release GPS of its confidential obligations in part. Implausibly, Your Honors, plaintiffs now pivot from those allegations and try to paint the G.C. as the mastermind of this supposed scheme to defame them, but there's really nothing at all that ties the G.C. to the events that supposedly led to plaintiffs' defamation in 2016. And even if the G.C.'s after-the-fact communication could be viewed as somehow relating to plaintiffs' claims, it is exactly the sort of tenuous and incidental forum contact that this court has consistently rejected as insufficient. The second thing plaintiffs point to is this vague allegation that the Perkins Coie political law group that Mr. Elias oversees in D.C., quote, has significant ties to Chicago, and that Mr. Elias and Mr. Sussman, both D.C. partners, worked, quote, in conjunction with in Illinois. But we don't know what those significant ties were, which Perkins Coie lawyers in Chicago were supposedly involved, and what they purportedly did in conjunction with Mr. Elias and Mr. Sussman. Apart from pure speculation and conclusory say-so, there is just not a single well-pled fact that plausibly suggests anyone in Chicago had any involvement whatsoever with the events that purportedly led to a defamatory statement. And I think the absence of forum-linked facts is really all the more striking here, given what plaintiffs do allege. The complaint explicitly asserts, paragraph 16 and 72, that Mr. Elias in D.C., quote, organized and directed the opposition research by Fusion GPS. And plaintiffs similarly suggest, consistent with that in their opening brief at page 5, that Fusion was instructed to report exclusively to have this very clearly D.C.-centric set of allegations. And then plaintiffs proceed to make this bold allegation that Perkins Coie's relationship with Fusion GPS was somehow, quote, orchestrated through the firm's Chicago office. We think the district court rightly rejected that assertion as baseless conjecture, to use the court's term. Ultimately, Your Honors, we think plaintiffs filed this suit in Illinois for one reason, and that is forum shopping. As paragraphs 104 through 106 of the complaint acknowledge, this is the second unsuccessful lawsuit plaintiffs had filed against these defendants, and it was simply too late to file defamation claims without at least the possible application of a saving statute, like Illinois, but not D.C., and not most other jurisdictions provides. And so plaintiffs piece together tenuous Illinois connections to create the appearance of personal jurisdiction. But we're not aware of a single case in the Seventh Circuit where a court has found jurisdiction based on such a thin relationship among the defendant, the forum, and the litigation. And so we think the district court was right to reject what it called a, quote, patchwork of unrelated Illinois connections and plaintiffs' so-called efforts to blow smoke, when the reality is that plaintiffs' claims, to use the district court's phrase, quote, consist entirely of out-of-state activity by out-of-state actors. For either or both of those jurisdictional reasons, either the lack of subject matter jurisdiction under ISI International or the lack of personal jurisdiction under this court's clear precedence, we think the court should affirm the dismissal of the case. Unless the court has any questions, I thank you very much. Thank you, Mr. Berry. Mr. Kelly, we'll return to you and give you a couple minutes. Oh, thank you very much, Your Honor. This is indeed a tale of two cities, between Washington, D.C. and Chicago. What the appellee fails to mention is Mr. Garinger, who is head of the Chicago office for their law firm. And specific jurisdiction has been shown, arising from Mr. Garinger funneling DNC money to pay for and fund the dossier and the agency relationship that the law firm had in service to its clients, the DNC. We've eliminated upon a number of different points involving the pattern Mr. Garinger's activities as managing attorney for the law firm Chicago office. And each of those would certainly pin down a specific jurisdiction, which we have alleged in this particular case. And reverting back to the diversity question, again, it would be premature at this point, and we do need a profound jurisdictional discovery. And those are liberally granted by federal rules to make a final determination, one or the other, whether or not there's indeed a stateless, accurate, stateless type of partnership, which has been discussed a bit earlier. And all we're seeking is more information. We've made these allegations based upon information and belief and in good faith. The jurisdictional requirements here are easily met when considering that Mr. Garinger had cloaked under this privilege the attorney-client relationship for concealing the scheme, which has now been added by the Inspector General's office in a report not recently released, and the FBI agent who completely abused the intelligence and the process, resulted in criminal charges and a conviction, receiving probation. That FBI agent's name was Mr. Cline Smith. And this is really just a travesty to Mr. or Dr. Carter. At the time, in Chicago, when all this news broke, he left the country. You know, here he is now being painted as some sort of international fugitive. This is just improper and wrong, and we would stand on the complaint for jurisdictional reasons. Thank you very much, Your Honor, and an opportunity to propound discovery jurisdictionally. Thank you. Very well. Thanks to both parties. The case is taken under advisement, and the Court will stand in recess for the day. Thank you very much.